# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

| In Re: | ) | |
|---|---|---|
| | ) | Case No. 09-14113-C |
| TRC Nutritional Labs, Inc. | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL,
NOTICE TO FILE OBJECTIONS AND SETTING FINAL HEARING

This contested matter concerns the Motion for Authority to Use Cash Collateral and Request for Expedited Hearing (the "*Motion*") of the Debtor-In-Possession, TRC Nutritional Labs, Inc., ("*Debtor*"), filed on January 4, 2010, Doc. No. __ seeking the entry of an order authorizing Debtor to use Cash Collateral (as hereafter defined) in which its secured creditor, UMB Bank, N.A., ("*Lender*"), claims an interest.  Debtor appears by its attorney, Mark A. Craige.  Other parties appeared at the hearing as reflected in the record of the hearing.  The appearing parties announced an agreement regarding the use of cash collateral in an amounts and for the time period set forth below pursuant to the budget attached hereto as Exhibit "A" and incorporated herein (the "*Budget*").

After consideration of the statements of counsel and hearing the evidence presented, the Court hereby FINDS and CONCLUDES as follows:

A. On December 31, 2009 (the "*Petition Date*"), Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, Debtor has continued to operate its business and manage its affairs as a Debtor-In-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.  Prior to the entry of this Order, Debtor has not used any Cash Collateral.

  B. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 1334 and 157.  The filing of the Motion commenced a core proceeding as defined in 28 U.S.C. § 157.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

  C. Debtor is an Oklahoma Corporation organized for purposes of operating a health supplement manufacturing and marketing business.

  D. Lender is a federally chartered commercial bank that loaned money to the Debtor pursuant to a loan agreement (the "*Loan Agreement*") and the various promissory notes and other obligations executed by the Debtor pursuant to the Loan Agreement (collectively, the *"Lender Note"*).

  E. Lender contends it holds valid, enforceable and allowable claims, as defined at 11 U.S.C. § 101, against Debtor in the approximate amount of $156,450.00, plus any and all interest, fees (including, without limitation, legal fees), expenses, and other obligations and liabilities of Debtor pursuant to the Lender Note (*the "Prepetition Indebtedness"*).

  F. Lender contends it holds properly perfected first in priority liens and security interests in all of Debtor's cash, accounts, equipment, general intangibles and other personal property including (without limitation) proceeds (collectively, the "*Prepetition Collateral*").  The Debtor does not believe there are any other parties claiming any valid and perfected lien, claim or encumbrances in or any of the Prepetition Collateral.

  G. Lender contends it has perfected its liens and security interests in the Prepetition Collateral by virtue of certain documents executed and delivered by Debtor, and documents filed with the appropriate state and county filing offices (collectively, the "*Perfection Documents*").

H.      Debtor has a cash need for the purposes of meeting necessary expenses incurred in the ordinary course of operating its business, including, but not limited to, payroll and all taxes related thereto, overhead and other post-petition expenses necessary to maintain Debtor's operations.  Debtor is without sufficient funds to meet such ordinary and necessary expenses without the use of that portion of the Prepetition Collateral that constitutes cash, negotiable instruments, securities, deposit accounts, or any form of cash equivalents whenever acquired including (without limitation) all proceeds, products, rents or profits of the Prepetition Collateral whether existing before or after the commencement of this case (hereinafter "*Cash Collateral*").

I.      The entry of this order is without prejudice to any party objecting to any of the relief granted herein on a permanent basis.

J.      Sufficient and adequate notice of the Motion and the hearing on the Motion has been given pursuant to FED. R. BANKR. P. 2002, 4001(b) and 9006, and as required by §§ 102, 361, 362 and 363 of the Bankruptcy Code and the order of the Court regarding notice.

K.      Good cause has been shown for the entry of this Order only on a temporary, interim basis. Among other things, entry of this Order will afford Debtor an opportunity to maintain the value of its assets in the best available manner and is in the best interests of Debtor, its creditors and Debtor's estate.

Accordingly, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Subject to the terms and conditions hereinafter set forth, Debtor is hereby authorized to use Cash Collateral in an amount not to exceed $_____ for the period from January _, 2010, through the ___ day of _____, 2010 in amounts consistent with the Budget to pay those actual and necessary ordinary course operating expenses pursuant to the terms of this Order.

3

2. Upon final approval of the Motion and this Order, Debtor is authorized to use Cash Collateral and pay those amounts listed on the Budget and any Approved Subsequent Budget (as hereafter defined). Debtor shall submit to Lender by the 15th day of each month preceding the month for which the budget applies (commencing January 15th, 2010 for the month of February ___, 2010) monthly budgets for each month that the Debtor is a Debtor-In-Possession in this bankruptcy case (the "*Subsequent Budgets*"). Debtor is authorized to use Cash Collateral for the calendar month consistent with the Subsequent Budgets and this Order unless Lender notifies Debtor's counsel in writing delivered via this Court CM/ECF system and to the other parties requesting notice herein of its objection to any line item of expense set forth in the Subsequent Budget within five (5) business days of receiving a Subsequent Budget. In the event Lender notifies Debtor in writing of its objection to a line item set forth in the Subsequent Budget, Debtor shall not use Cash Collateral during the period covered by such Subsequent Budget with respect to such line item without express authorization from this Court or the withdrawal of such objection by Lender. Notwithstanding an objection by Lender to a line item of a Subsequent Budget, Debtor may use Cash Collateral to pay expenses represented in other line items of the Subsequent Budget to which no objection is advanced by Lender. Those line items in a Subsequent Budget to which Lender has interposed no objection shall be referred to as an "*Approved Subsequent Budget*". Lender may consent in writing to the use of Cash Collateral for purposes and/or in amounts different than, or in addition to, the items set forth in the Budget, or a Subsequent Budget, and any such additional amount permitted, use of Cash Collateral shall be subject to all of the provisions hereof, including, without limitation, every form of the adequate protection provided to Lender hereunder to the same extent as if such additional use was shown on the Budget or a Subsequent Budget. In the event the Lender and the Debtor are

unable to resolve a timely objection regarding any Subsequent Budget, then either such party may request an expedited hearing thereupon by filing a request for such with this Court whereupon this Court may set the matter for hearing as its docket may allow. The Court finds that in such event, no more than 3 business days notice shall be required for an expedited hearing.

3. All post-petition funds received by Debtor in any manner derived or related to the Prepetition Collateral, including but not limited to the Cash Collateral, shall be deposited into the Debtor's DIP operating accounts and used only for purposes of Debtor making those payments authorized by this Order.

4. Unless otherwise approved by the Court upon a duly entered order or upon Lender's express approval following a request made by Debtor, disbursements during the term of this Order shall not exceed the gross amount of the total stated in the budget subject to a five percent (5%) variance for the total budgeted, provided however, that the specific line items in the budget shall not be binding or constitute a restriction upon the use of Cash Collateral.

5. Debtor shall use Cash Collateral solely in accordance with the Budget or an Approved Subsequent Budget, or as otherwise ordered by the Court, or as agreed to in writing by Lender.

6. Debtor shall cooperate and comply with any reasonable request by Lender to monitor Debtor's compliance with the terms of this Order.

7. Debtor contends the value of the property subject to the security interests of the Lender are substantially in excess of the Prepetition Indebtedness. Specifically, the Debtor contends that as of the Petition Date the current value of its raw materials, inventory, and accounts receivable is at least $1,000,000.00, so that the Lender is over secured by a substantial

margin.  As security for the use of Cash Collateral and to provide Lender with adequate protection with respect to any decrease in the value of Lender's interest in Prepetition Collateral or Cash Collateral such that the value thereof is less than the amount of the Prepetition Indebtedness, Debtor hereby grants in favor of Lender a continuing, valid, automatically perfected lien and security interest of a first priority in and upon Debtor's right, title and interest in and to all of its property, including the proceeds, products, or profits therefrom, of every kind and nature, whether real or personal, tangible or intangible, whether now or hereafter existing and whether owned, acquired, possessed or controlled before, on or after the Petition Date, and wherever located, including accounts, fixed assets, machinery, equipment, fixtures, furniture, accessions and additions thereto, insurance proceeds, products, and goods, now in existence or hereafter created and all proceeds, accessions thereto, substitutions and replacements and all tangible assets acquired by the Debtor post-petition other than claims or causes of action arising under Sections 544-550 of the Bankruptcy Code (collectively, the "*Post-petition Collateral*").  The replacement liens granted herein to the Lender upon the Post-petition Collateral shall secure the Prepetition Indebtedness only to the extent that the value of the Prepetition Collateral is determined to be insufficient to fully secure the Prepetition Indebtedness.  The post-petition liens granted herein are subject to the payment of U.S. Trustee fees and all amounts in excess of prepetition retainers for the payment of the Debtor's court approved professional fees.

      8.     Upon entry of this Order, the security interests and liens granted to Lender by virtue of this Order shall be valid, perfected and enforceable against all entities and parties, without regard to applicable federal, state or local filing requirements or statutes calling for filing or recording.  Lender shall not be required to file financing statements or any other instruments or documents in any jurisdiction, or take any other action in order to validate or perfect the

6

security interests and liens granted to Lender by this Order. This Order shall be the means of, and sufficient evidence of, such validation and perfection. If Lender shall, in its sole discretion, choose to file such financing statements or otherwise confirm perfection of such security interests and liens: (a) Lender is authorized to effect such filings and recordings, and any such financing statement regardless of the time of actual filing or recording, shall be deemed to have been filed or recorded at the time and date and simultaneously with the Petition Date; and (b) Debtor is authorized and directed to execute and deliver such agreements, instruments and other documents, including (without limitation) pledges and Uniform Commercial Code financing statements. Such filing or recording made to confirm perfection of such security interest and lien shall not be deemed to be a violation of the automatic stay imposed by § 362(a) of the Bankruptcy Code, and the automatic stay is modified to permit such filings and recordings to the extent applicable.

    9.    As additional adequate protection to Lender, Debtor shall:

    A.    Continue to maintain, with financially sound and reputable insurance companies, insurance coverage in amounts and against such risks as reasonably required by Lender with such insurance policies reflecting Lender as loss payee;

    B.    Provide Lender with copies of all documents that Lender may reasonably request concerning the revenues, assets, costs and liabilities of Debtor, including copies of all monthly operating reports filed by Debtor in this bankruptcy case.

    C.    Cause all revenue, income, rents, royalties, collections, and any other post-petition funds received by Debtor in any manner derived or related to the Prepetition Collateral, including but not limited to the Cash Collateral, to be deposited into the

Debtor's DIP operating accounts and used only for purposes of making those payments authorized by this Order;

D. Cooperate and comply with any reasonable request by the Lender to monitor Debtor's compliance with the terms of this Order; and

E. Not permit the aggregate going concern value of its raw materials, inventory, and accounts receivable to fall below $250,000.00 as reflected on the Debtor's Monthly Operating Reports to be filed with this Court.

10. As additional adequate protection, Debtor shall make payments to Lender in the form of monthly payment of an amount equal to interest at the non-default contract rate of interest provided under the Credit Agreement, which shall be paid in the amounts required by the Credit Agreement on the first business day of each month commencing on February 1, 2010 until further order of this Court.

11. Unless otherwise agreed to by Lender or ordered by the Bankruptcy Court, the liens, rights and security interests granted to Lender pursuant to this Order and the priority of Lender's security interests and liens granted herein or any subsequent order authorizing the use of cash collateral shall not be modified, altered, extended, impaired or affected in any manner by any plan of reorganization, or liquidation, or by any order of confirmation for Debtor, or any other financing or extensions of credit, or incurring of debt of Debtor pursuant to § 364 of the Bankruptcy Code or otherwise; and such priority in payment, lien, mortgage and security interest shall maintain their priority as provided by this Order until Lender is fully compensated for any diminution in the value of the Pre-Petition Collateral as a result of the Debtor's use of Cash Collateral as provided herein.

12. The occurrence of any of the following shall constitute an event of default under this Order, whether with or without notice of any kind to Debtor by Lender, and Lender shall have no obligation to provide any notice of any such occurrence: (i) any material default, violation or breach of any of the terms of this Order by Debtor; (ii) conversion of Debtor's case to Chapter 7 of the Bankruptcy Code or the filing of a plan of reorganization that materially alters, impairs or affects any material terms of this Order; (iii) the appointment of a trustee herein; and (iv) the dismissal of this bankruptcy case (any of the foregoing events of default being referred to herein, individually, as an "*Event of Default*" and, collectively, as "*Events of Default*").

13. Upon the occurrence of an Event of Default set forth in paragraph 12 above, then after giving at least 5 days notice in writing delivered via this Court CM/ECF system to the other parties requesting notice herein: (i) Debtor's authority to use Cash Collateral and any and all obligations of Lender under this Order shall terminate; (ii) Lender shall not be obligated to take title to any of the Prepetition Collateral in the pursuit of its rights and remedies; and (iii) Lender shall not be obligated to, but may, in its sole discretion, and only upon its written consent, allow the use of Cash Collateral.  Consent of Lender allowing Debtor to use Cash Collateral after an Event of Default shall not constitute a waiver, limitation or modification of any of Lender's rights and remedies pursuant to this Order and applicable law.  All of the protections granted to Lender under this Order shall be available upon any use of Cash Collateral by Debtor without regard to whether there has been an Event of Default or Lender has approved such use.

14. Consistent with the terms of this Order and the Budget or any Approved Subsequent Budget, Debtor shall (a) make any and all payments necessary to keep its property operating and in good repair and condition and shall not permit or commit any waste thereof, (b)

9

maintain all of its property in good condition and repair, not commit any waste thereof and make all necessary replacements thereof, and operate the same properly and efficiently, and (c) preserve and maintain alliances, privileges, certificates and the like necessary for the operation of its business.

15. This Order and the entry thereof shall not affect or establish the validity or enforceability of Lender's prepetition liens and security interests in the Prepetition Collateral.

16. The entry of this Order shall not prejudice or limit the rights of Lender or any other party to seek protection or relief with respect to Cash Collateral or to file and pursue a motion to modify the automatic stay in order to foreclose on Prepetition Collateral or take other actions in this bankruptcy case.

17. Nothing in this Order shall in any way restrict or limit the scope of pre-petition liens, security interests or claims or otherwise adversely affect the Perfection Documents.

18. To the extent permitted by law, the provisions of this Order shall be binding upon and inure to the benefit of Lender, Debtor, their respective successors and assigns including any trustee hereinafter appointed as a representative of the estate herein, or of the estate in any subsequent proceedings under the Bankruptcy Code, and all creditors of Debtor and other parties in interest.

19. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness, or liability incurred by Debtor to Lender before the effective date of such modification, vacation, or stay; or (b) the validity or enforceability of any security interest, mortgage, lien, priority or other protection authorized or created hereby.  Notwithstanding any such modification, vacation, or stay, the Cash Collateral actually used by Debtor before the

effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein.

20. Lender may request the Court to provide other protections for the benefit of Lender as a condition to the continued use by Debtor of the Cash Collateral.

21. The automatic stay arising under § 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit Lender and Debtor to implement the provisions of this Order.

22. This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to this Court under the Bankruptcy Code and jurisdictional laws of the United States, to enforce the terms of this Order and to adjudicate any and all disputes in connection therewith.

23. Debtor is hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements, as Lender may reasonably require as evidence of and for the protection of the Prepetition Collateral, Cash Collateral, and the Post-petition Collateral, or that may be otherwise deemed necessary by Lender to effect the term and conditions of this Order.

24. This Order is an emergency interim order pursuant to Fed. R. Bankr. P. 4001(b)(2) and all relief granted herein, including but not limited to the granting of any and all liens and priority claims is expressly subject to final approval at a hearing to be held as provided herein below.  The entry of this interim Order shall not prejudice or limit the rights of any other party to seek relief or otherwise dispute the nature, extent and validity of the relief granted herein or the Lender's prepetition security interest and liens or the claims secured thereby or any liens

or claims granted herein until such time as this interim Order shall become a final order as provided below.  Upon final approval of this Order, all liens or claims granted to Lender herein shall be binding and enforceable as to all parties to this case.

## NOTICE TO FILE OBJECTIONS
## AND FINAL HEARING

Notice is hereby given that a hearing to consider final approval of this Order shall be held on the ___ day of _____, 2009, at _____ o'clock _.m. in Courtroom No. __, 224 South Boulder Avenue, Tulsa, Oklahoma, (the "*Hearing*").  If you oppose or object to any relief granted in this Order, you must file a written objection with the Clerk of this Court on or before the ___ day of _____, 2009.

**Your rights may be affected.  You should read this document carefully and consult your attorney about your rights and the effect of this document.**  If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103, no later than the ___ day of _____, 2009.  You should also mail a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court.  You must attend the Hearing to present your objection and otherwise comply with this Court's local rules and procedures.  If you fail to file a timely response or appear at the Hearing, the Court may grant final approval of this Order without consideration of your position.

Dated this ___ day of January, 2010.

13

Submitted by:
**Patrick J. Malloy, III**, OBA #5647
**Malloy Law Firm, P.C.**
111 W. 5th Street, Suite 700
Tulsa, Oklahoma  74103-4261
918.747.3491 Telephone Number
917.743.6103 Facsimile Number

and

  /s/Mark A. Craige
**Mark A. Craige**, OBA #1992
**MorrelSaffaCraige, P.C.**
3501 South Yale Avenue
Tulsa, Oklahoma 74135-8014
918.664.0800 Telephone Number
918.663.1383 Facsimile Number
e-mail address: mark@law-office.com

**Attorneys for Debtor-In-Possession**